UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIRST FINANCIAL LENDER, )<br>)<br>Defendant. )<br>_____ ) | Case No.: C 09-0545 PVT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

On February 16, 2010, the parties appeared for hearing on Plaintiff's motion for summary judgment. After the hearing, the court solicited supplemental briefs which the parties have filed. Based on the briefs and arguments submitted,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED because Plaintiff has not met its initial burden of producing evidence that would support a finding that Defendant breached the parties' agreement.

**I.    FACTUAL BACKGROUND**

In 2004, Defendant First Financial Lender ("First Financial" or "Defendant") entered into a Loan Purchase Agreement with Lehman Bank, FSB ("LBB"). The Loan Purchase Agreement governed LBB's purchase of home loans from First Financial. The Loan Purchase Agreement

ORDER, *page 1*

1  incorporates the terms and conditions of the Aurora Seller's Guide ("Seller's Guide").

2  Pursuant to the Loan Purchase Agreement, First Financial sold various home loans to LBB,
3  including the set of home loans[1] at issue in this action (collectively the "Underlying Home Loans").
4  LBB sold the Underlying Home Loans to Plaintiff Lehman Brothers Holdings, Inc. ("LBHI").  LBB
5  assigned to LBHI all of LBB's rights in and to its Loan Purchase Agreement with First Financial and
6  the Seller's Guide, including all rights to repurchase and indemnity remedies.

7  The first payments were due on the Underlying Home Loans on August 1, 2006.  The first
8  payments were not made until September 22, 2006.

10  **II.   STANDARD OF REVIEW**

11  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims
12  or defenses."  *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986).  To obtain summary judgment, a
13  party must demonstrate that no genuine issue of material fact exists for trial, and that based on the
14  undisputed facts he is entitled to judgment as a matter of law.  *Id.,* at 322.

15  The moving party "bears the initial responsibility of informing the district court of the basis
16  for its motion, and identifying those portions of 'the pleadings, depositions, answers to
17  interrogatories, and admissions on file, together with the affidavits, if any' which it believes
18  demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  If the moving party meets its
19  initial burden, then the non-moving party "must set forth specific facts showing that there is a
20  genuine issue for trial."  FED.R.CIV.PRO., Rule 56(e).

21  The court must draw all reasonable inferences in favor of the non-moving party.  *Masson v.*
22  *New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991); *Matsushita Elec. Indus. Co. v. Zenith Radio,*
23  475 U.S. 574, 588 (1986).

24  It is the court's responsibility "to determine whether the 'specific facts' set forth by the non-
25  moving party, coupled with undisputed background or contextual facts, are such that a rational or
26  reasonable jury might return a verdict in its favor based on that evidence."  *T.W. Elec. Service v.*

---

[1] A first and second on the same residence, referred to herein as Loan Nos. ****8761 and ****4843, respectively.

ORDER, *page 2*

*Pacific Elec. Contractors,* 809 F.2d 626, 630, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

"If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

### III. DISCUSSION

#### A. PLAINTIFF HAS NOT SUBMITTED EVIDENCE SHOWING THAT PLAINTIFF BREACHED ANY OBLIGATION TO REPURCHASE THE UNDERLYING HOME LOANS AT ISSUE IN THIS ACTION

Here, Plaintiff has not established that any notice of default on the Underlying Home Loans was duly given to Defendant, so as to trigger any repurchase or indemnity obligations on Defendant's part. The Loan Purchase Agreement provides that:

> "All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, *when received* by the other party... ."

(Emphasis added.). (*See* Declaration of Zachary Trumpp, Exh. A, Section 7.)

Plaintiff submitted a copy of a notice of an "Early Payment Default" that it claims was sent to Defendant by the loan servicer, Aurora Loan Services. With its reply papers it submitted a declaration stating that pursuant to Aurora's practice the notice would have been sent by UPS or a similar commercial carrier that provides proof of delivery, but that Aurora does not retain proofs of delivery indefinitely. (*See* Declaration of Scot Osborne, ¶ 3.) No proof of delivery has been submitted for the notice Plaintiff claims was sent to Defendant. Pursuant to the Loan Purchase Agreement, when notice is delivered by means other than certified or registered mail with return receipt requested, notice is "duly given" when the notice is actually received by the other party. Plaintiff has not submitted any evidence showing when, if at all, Defendant received the notices Plaintiff claims were sent to Defendant regarding the Early Payment Defaults of the Underlying

Home Loans. Even if a commercial carrier such as UPS were deemed to be equivalent to mailing with return receipt requested, Plaintiff's failure to put the proof of delivery into evidence constitutes a failure of proof precluding summary judgment on this issue.

### B. ANY EARLY PAYMENT DEFAULTS ON THE UNDERLYING HOME LOANS WERE CURED WHEN PLAINTIFF ACCEPTED THE LATE PAYMENTS

Plaintiff bases the present motion entirely on a failure of the borrower of the Underlying Home Loans to timely make the first payments due on his mortgage. As noted above, the first payments were not received by Plaintiff until September 22, 2006, almost 2 months after they were due. A notice of the Early Payment Default dated September 19, 2006, which Plaintiff claims was sent to Defendant, states in the third paragraph on the second page:

> "If you are unable to cure the defect or cannot provide sufficient evidence to refute our findings within 30 days, Lehman *will* require that you fulfill your obligations pursuant to the Agreement and the Seller's Guide and repurchase the loan." (*See* Declaration of Zachary Trumpp, Exh. E, emphasis added.)

Thus, the notice that purportedly was sent Defendant[2] expressly allows for an opportunity to cure the Early Payment Default, and indicates that Plaintiff will require repurchase of the loans *in the future* if the default is not cured.

Plaintiff argues that Early Payment Defaults can never be cured, quoting language from the Section 710 of the Seller's Guide that could be construed to render Early Payment Defaults non-curable. However, the language is at best ambiguous. And in any event, Section 9 of the Loan Purchase Agreement, into which the Seller's Guide is fully incorporated, provided that terms of the parties' agreement could be waived or modified in writing. Drawing all reasonable inferences in favor of the non-moving party, the evidence could support a finding either that the Seller's Guide allows for cure of Early Payment Defaults or that the September 19, 2006 letter waived or modified the provision so as to allow for cure in this case.

The documents submitted by Plaintiff show two monthly payments were made on each of the Underlying Home Loans within 30 days after the date of the notice of Early Payment Default.

---

[2] The court also notes that this letter, regarding Loan No. ****4843, is the *only* notice in the record as to any Early Payment Default. There appears to be no proof of any such notice in the record as to Loan No. ****8761.

Drawing all reasonable inferences in favor of the non-moving party, it appears one set of payments was for the current month and one was a belated payment for the prior month, curing the Early Payment Default. And Plaintiff actually concedes that the first payments were made on September 22, 2006. (*See* Declaration of Zachary Trumpp, ¶¶ 11 & 12.)

Because the Early Payment Defaults were cured, no obligation on Defendant's part to repurchase the Underlying Home Loans was triggered. And, in any event, Plaintiff has not submitted any evidence that a second notice setting forth an *unconditional* request for Defendant to repurchase the Underlying Home Loans. Because the Loan Purchase Agreement makes the repurchase requirement optional at Plaintiff's behest, unless and until Plaintiff notified Defendant that Plaintiff was actually exercising the option, no repurchase obligation arose on Defendant's part.

       C.       PLAINTIFF'S DECISION TO SELL LOAN NO. ****8761 AND WRITE OFF LOAN NO. ****4843 RELIEVED DEFENDANT CERTAIN OBLIGATIONS IT OTHERWISE MAY HAVE HAD TO REPURCHASE OR INDEMNIFY

The documents and declarations submitted by Plaintiff show that it sold Loan No. ****8761 at a discount and wrote off Loan No. ****4843, rather than foreclose and acquire title to the property. (*See* Declaration of Zachary Trumpp, ¶ 16.) Section 710 of the Seller's Guide provides, in pertinent part:

> "If Purchaser determines, for any reason, not to acquire title to the Mortgaged Property relating to the defaulted Mortgage Loan, Seller will nonetheless remain responsible to Indemnify Purchaser, pursuant to Section 711 hereof, with respect to any breach of Section 702 or 709 hereof." (*See* Declaration of Zachary Trumpp, Exh. B, Section 710.)

By selling Loan No. ****8761 and writing off Loan No. ****4843, Plaintiff effectively relieved Defendant of any obligation it otherwise had to repurchase that loan and/or indemnify Plaintiff, other than for breaches of Sections 702 or 709 of the Seller's Guide. In this motion for summary judgment Plaintiff does not contend Defendant breached either Sections 702 or 709 of the Seller's Guide. Thus, based on the evidence submitted by Plaintiff, Defendant had no obligation to repurchase the Underlying Home Loans or indemnify Plaintiff for losses in connection with those loans.

### IV. CONCLUSION

Plaintiff has not met its initial burden of producing evidence showing that, based on undisputed facts, it is entitled to judgment. On the contrary, drawing all reasonable inferences in favor of the non-moving party, it would appear Defendant did not have any obligation to repurchase the Underlying Home Loans and/or indemnify Plaintiff with regard to any Early Payment Defaults on the loans. Thus, summary judgment in favor of Plaintiff is not warranted.

Dated: *3/19/10*

PATRICIA V. TRUMBULL
United States Magistrate Judge